# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

JIN SOO PARK,

    Plaintiff,

vs.

CITIBANK,

    Defendant.

Civil Case No. 05-00006

**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter came before the court for a hearing on the Defendant's Motion for Summary Judgment on April 1, 2008. The Defendant Citibank argued that Jin Soo Park's (the "Plaintiff") claims were barred by the applicable statute of limitations or by a contractual time limitation period. Having considered the parties' arguments and submissions, as well as relevant caselaw and authority, the court hereby **GRANTS** the Defendant's motion and issues the following decision.

## FACTUAL BACKGROUND

The Plaintiff is a 50-year-old Korean citizen and resident of Korea who has limited English ability. At one time, he was a licensed ophthalmologist who had opened his own clinic in Inchon City, Korea in 1990. *See* Docket No. 62, Mem. Supp. Mot., Ex. 1. However, he stopped seeing patients in January or February of 2000 because he felt that people were trying to steal his money and were "attacking" him. *Id.,* Ex. 47; 39: 13-25 and 40:1-25. Eventually, the Plaintiff closed his medical clinic around July 1, 2001. *Id.,* Ex. 2. On July 26, 2001, the Plaintiff

was declared a bankrupt. *See* Docket No. 8, Compl., Ex. 3.

In February 1998, the Plaintiff and two of his sisters-in-law, Soon Ie An and Myund Kae Kim came to Guam from Korea and opened and deposited six (6) separate time deposit accounts in the amount of One Hundred Thousand Dollars ($100,000.00) respectively, and one (1) time deposit in the amount of Seventy-Three Thousand Dollars ($73,000.00) for a total of Six Hundred Seventy-Three Thousand Dollars ($673,000.00). The accounts were jointly held by the three of them, with any one of them having the ability to withdraw or otherwise deal with the accounts acting alone. The accounts automatically rolled-over at each thirty-day maturity. *See* Docket No. 62, Mem. Supp. Mot., Ex. 5. The accounts were governed by certain "Terms and Conditions" as agreed to by the Plaintiff. *Id.,* at 6. The Plaintiff indicated that he had read them several times. *Id.,* at Ex. 48; 25:1-13.

In addition to opening the time deposit accounts, the Plaintiff and his two sisters-in-law opened two checking accounts at Citibank Guam. One checking account - No. 595640 - was in all three names, and the other - No. 595659 - was only in the Plaintiff's name. When the Plaintiff set up the time deposit accounts, Citibank informed him that he could transfer the funds from the deposit accounts to his checking accounts.

Thereafter, the Plaintiff attempted to transfer his funds from the deposit accounts to his checking account at Citibank, New York. The Plaintiff alleges that he made numerous requests to transfer funds during the period of October 1998 through September 2000 and again during the period of July 2001 through December 2001. *See* Docket No. 1, Compl., at ¶¶s 10, 13, 16, 18, 20, 20, 22, 26 and 28. He made written requests dated October 2, 1998, November 16, 1998, January 20, 1999, February 10, 1999, May 24, 1999, July 14, 1999, September 12, 1999, December 25, 1999, January 15, 2000, February 15, 2000, April 13, 2000, August 14, 2000 and September 4, 2000. *See* Docket No. 62, Mem. Supp. Mot., Exs. 7-19. Citibank denies having received any of the 13 transfer requests.[1] Although 11 of the 13 letters were supposedly

---

[1] In his complaint, the Plaintiff alleges that he requested that funds be transferred into his active Citibank New York checking account. *See* Complaint, at ¶ 10. However, a review of the letters produced and that the Plaintiff claims he sent to Citibank (Exs. 7-19) reveal that he requested a transfer to one or the other of his checking accounts with Guam Citibank. Further the complaint

2

addressed to Citibank's Compliance Director, Keen Setiadi,[2] she denies receiving any of them. *See* Docket No. 63, Declaration of Keen Setiadi ("Setiadi Decl."), at ¶ 25.

On July 25, 2001, the Plaintiff alleges that he submitted a written request that Citibank transfer $670,000.00 from his deposit accounts according to his instructions. *See* Docket No. 1 Compl., at ¶ 13. The Plaintiff claims he submitted written instructions again on December 6 and 7, 2001 to Citibank that all funds in deposit account should be withdrawn and transferred.

The Plaintiff also alleges that he executed and mailed four checks to Citibank directing that it make payment to his New York checking account or to his Salomon Smith Barney account. On or about July 30, 2001, the Plaintiff mailed a check to Citibank in the amount of Three Thousand Dollars ($3,000.00) to be paid to his Citibank New York checking account. *See* Docket No. 1 Compl., at ¶ 16.

On or about August 1, 2001, the Plaintiff mailed a check to Citibank in the amount of Two Thousand Dollars ($2,000.00) to be paid to his Citibank New York checking account. *See* Docket No. 1 Compl., at ¶ 18. On or about August 3, 2001, the Plaintiff mailed a check to Citibank in the amount of two thousand dollars ($2,000.00) to be paid to his Salomon Smith Barney account. *See* Docket No. 1, Compl., at ¶ 20. On or about August 4, 2001, the Plaintiff mailed a check to Citibank in the amount of three thousand dollars ($3,000.00) to be paid to his Salomon Smith Barney account. *See* Docket No. 1, Compl., at ¶ 22.

The Plaintiff alleges that the requests were not honored and there was a delay in transferring his funds which caused him great mental distress. He also claims that because of Citibank's actions, it is responsible for the closure of his medical clinic in 2000 and his designation as bankrupt in July 26, 2000. *Id.* at ¶ 34.

On January 17, 2005, the Plaintiff filed suit against Citibank arising from the delay in transferring his funds. The Plaintiff alleges six counts related to banking transactions involving international or foreign banking and/or banking in a dependency or insular possession of the

---

refers to a letter dated October 25, 2000, which was never produced.

[2]Ms. Setiadi's full title is as Citibank's Asia Pacific Consumer Bank Anti-Money Laundering Compliance Director. *See* Docket No. 63.

3

United States, namely Guam. In Count I the Plaintiff alleges that he was a depositor with Citibank and that Citibank wrongfully dishonored banking items presented to Citibank. In Count II the Plaintiff alleges that Citibank breached a covenant of good faith and fair dealing with him. In Count III the Plaintiff asserts fraudulent misrepresentation.[3] The Plaintiff alleges in Count IIIA that Citibank negligently caused him to suffer emotional distress. In Count IV the Plaintiff alleges that Citibank made negligent misrepresentations relating to banking transactions, and Count V alleges the tortious breach of the covenant of good faith and fair dealing.

*HISTORY OF INTERACTIONS*:

As noted, the Plaintiff claims he made several demands to transfer his funds from 1998 through September 2000. However, Citibank found no records of such demands. After reviewing its own records, Citibank found that its contact with the Plaintiff began in March of 2001. On March 2, 2001, Citibank received a letter purportedly from the Plaintiff in which he claimed he was being persecuted by the South Korean government, informing Citibank that he was trying to escape South Korea, implying that he was trying to evade South Korean laws relating to foreign currency exchanges and instructing Citibank not to release any information to the South Korean government or to his joint account holders. *See* Docket No. 62, Mem. Supp. Mot., Ex. 20; Docket No. 63, Setiadi Decl. at ¶ 4. The letter instructed Citibank not to transfer funds out of the accounts, even to the joint account holders, which was inconsistent with the terms of the accounts. *Id.* According to Ms. Setiadi, the bank's compliance officer, the contents of the letter were suspicious and raised concerns. *Id.*

During June and July of 2001 a person purporting to be the Plaintiff repeatedly called Citibank. Ms. Setiadi gave all employees instructions that telephone calls from the Plaintiff should be routed to her and that Steven Lee, an officer with the bank, would act as a translator. *See* Docket No. 63, Setiadi Decl., at ¶ 5. The caller was unable to provide the Citibank representatives with the required personal information to confirm his identity. *Id.* at ¶ 5. During

---

[3] The Complaint contains six causes of action. However, they are misnumbered and the counts for fraud and negligent infliction of emotional distress are both designated as "Count III." Accordingly, the court will treat the later recited cause of negligent infliction of emotional distress as Count IIIA.

4

1 the conversations, the Plaintiff gave Ms. Setiadi and other bank employees inconsistent

2 instructions concerning his account. *Id.* ¶ 6. In some conversations he wanted to transfer his

3 money to New York, but in others he wanted to transfer his funds to New Zealand. And, in other

4 conversations, he wanted to transfer his money into one or another of his Guam checking

5 accounts. *Id.* The Plaintiff inquired as to whether he would be able to conduct a transaction if

6 he came to Guam with a passport under a different name and if Citibank could wire funds to

7 New Zealand under a different name. *Id.*

8 In her translated conversations with the Plaintiff of July 9 and 27, 2001, Ms. Setiadi told

9 the Plaintiff that unless he and his co-account holders came to Guam with the proper

10 identification, Citibank would disallow any transfer of his funds. Setiadi Decl., at ¶ 6. The

11 Plaintiff asked if Citibank would act on instructions made through his attorney. *Id.* Ms. Setiadi

12 restated that she would need to establish his identity first. *Id.*

13 On July 12, 2001, the Plaintiff telefaxed another letter to Citibank and said that a ". . .

14 party of Korean people was attacking me and the Korean person (Banker or teller)" should not

15 have access to this account because Korean person is "always connected with Korean Party

16 (political party or religious group organization)." *See* Docket No. 62, Mem. Supp. Mot., Ex. 21.

17 He complained that Citibank Guam's Korean speaking employee, Mr. Lee, was a "very high risk

18 person," and that Mr. Lee's conduct was "illegal" and should be investigated. *Id.* He further

19 requested information about how to transfer money "to some New Zealand Bank or U.S. Bank"

20 or to one of his two Guam checking accounts. *Id.*

21 On July 27, 2001, Citibank received a letter addressed to one of its employees, Rogel E.

22 Bondoc, and an executed Funds Transfer Agreement. *See* Docket No. 62, Mem. Supp. Mot.,

23 Exs. 22-23. The Plaintiff instructed Mr. Bandoc to transfer the time deposit funds to his

24 checking account in New York and alternatively, to transfer them to his checking account on

25 Guam. He stated that "Keen Setiadi (Chinese) and Steve Lee (Korean) absolutely must not be

26 access to those documents [Funds Transfer Agreement]." *Id.*

27 On July 25, 2007, Ms. Setiadi received a telefax from a Rob Dowler with ABN AMRO

28 Craigs, a bank in New Zealand. Mr. Dowler told Ms. Setiadi that the Plaintiff wanted to transfer

5

"all or part of" of his money and requested instructions. *See* Docket No. 62, Mem. Supp. Mot., Ex. 24. On August 6, 2001, Ms. Setiadi responded that someone "who claims to be Dr. Park continues to request that funds in accounts held jointly by three individuals be withdraw," but Citibank had been unable to properly identify the caller. She further informed Mr. Dowler that all three account holders would need to present themselves on Guam with proper identification. *Id.,* Ex. 25. Two days later, Mr. Dowler responded and stated that Citibank's requirement of having the account holders travel to Guam was "obviously demanding." *See* Docket No. 62, Mem. Supp. Mot., Ex. 26. He asked if the Bank might suggest alternative methods for the account holders to identify themselves. *Id.*

In response to Mr. Dowler's request, Citibank arranged for the Plaintiff and the co-account holders to identify themselves to a Citibank employee in Seoul, Korea, a one, Mr. Kyu-Jin Park. On August 10, 2001, Citibank's in-house counsel, Joe McDonald, telefaxed Dr. Park and explained the procedure. *See* Docket No. 62, Mem. Supp. Mot., Ex. 27. Mr. McDonald explained:

> We have received conflicting information concerning your accounts. In order to safeguard your funds, we have undertaken the strictest scrutiny of any activity remotely connected with your accounts. Please understand that we must adhere to strictest banking standards because of the peculiar facts with which we are faced.

*Id.*

On the same day, Mr. Kyu-Jin Park telefaxed a hand written note in Korean asking the Plaintiff to call him. *See* Docket No. 62, Mem. Supp. Mot., Ex. 28. On August 13, 2001, Mr. McDonald sent the Plaintiff a second letter repeating that he and joint account holders should identify themselves to Kyu-Jin Park in Korea. *See* Docket No. 62, Mem. Supp. Mot., Ex. 29 Mr. McDonald added "[o]nce we can positively identify the parties concerned, we will proceed to honor your transfer requests which you will course through Mr. Kyu-Jin Park." *Id.*

On August 22, 2001, the Plaintiff telefaxed Mr. McDonald to inform him that he and the other two account holders had met with Mr. Kyu-Jin Park in Seoul, Korea. *See* Docket No. 62, Mem. Supp. Mot., Ex. 31. However, he gave no instructions concerning the transfer of his funds. In subsequent correspondences, the Plaintiff expressed concerns about Kyu-Jin Park and stated that he would not meet with him again nor with "korean persons any more . . . ." *Id.,* at

6

Exs. 32 and 33. The Plaintiff instructed Mr. McDonald to contact his attorney, Mr. Mark Cowan, for instructions as to what to do with his accounts. "Before transfer our funds you must be contacted with our solicitor, Mr. Mark Cowan regarding Guam Citibank our accounts" and "[for] transfer procedure, should you contact with our solicitor, Mr. Mark Cowan. Now, only when I and my solicitor involve, should you transfer to other account." *Id.*, at Ex. 32.

On August 30, 2001, the Plaintiff telefaxed a letter to Mr. McDonald informing him that "some Officers in Guam Citibank and Seoul-Korea Citibank are to blame for their conducts and money loss, and more." *See* Docket No. 62, Mem. Supp. Mot., Ex. 33. "I or we am or are to turn over the court via our lawyer." *Id.* He further stated *"*[o]ur Lawyer and a representative . . . must deal with a transferring course on be-half of us." *Id.*

On August 21, 2001, Jossiah Antoine from New York Citibank sent a letter informing the Plaintiff that his checking accounts at that branch had been closed and that he would be receiving a check of the balance. The Plaintiff was informed that "[t]he way in which transactions are conducted on your accounts are unsatisfactory." *See* Docket No. 62, Mem. Supp. Mot., Ex. 30.

On September 20, 2001, Mr. McDonald telefaxed the Plaintiff and told him Citibank had not been contacted by Mr. Cowan and was still waiting for instructions concerning the Plaintiff's accounts. *See* Docket No. 62, Mem. Supp. Mot., Ex. 35.

On October 2, 2001 the Plaintiff wrote to the then-country manager of Citibank, Renzo Viegas. *See* Docket No. 62, Mem. Supp. Mot., Ex. 37. The Plaintiff attached copies of the recent letters he had received from Citibank employees, Mr. McDonald, Mr. Kyu-Jin, Eun Joo Lee and Jossiah Antoine *See* Docket No. 62, Mem. Supp. Mot., Exs. 28, 29, 31, 35 and 36. He stated "we do not accept that we receive" the letters and "we return to your employee's letters." *Id.,* Ex. 37. He complained that "Citibank employees prevented to conduct the transaction in Citibank accounts by a lot of methods . . . they intend to divert the funds methodically." *Id.*

On November 27, 2001, Mr. Eun Joo Lee again wrote to the Plaintiff and informed him that Citibank was still awaiting instructions from the Plaintiff's attorney, Mr. Cowan, or some other representative as to what to do with the Plaintiff's accounts. *See* Docket No. 62, Mem. Supp. Mot., Ex. 38.

On December 4, 2001, Mr. McDonald sent the Plaintiff a facsimile. Mr. McDonald told the Plaintiff that he had spoken to Attorney Cowan but that he had not received any instructions. The Plaintiff was additionally informed that Citibank had decided to close the accounts and to issue a "a check for all funds that [he had] on deposit with Citibank N.A. Guam." *See* Docket No. 62, Mem. Supp. Mot., Ex. 39. In response, the Plaintiff sent letters dated December 6 and 7, 2001 telling Citibank to send the money to him through his New Zealand lawyers. *Id.,* at Exs. 40 and 41.

On December 20, 2001, Citibank received a letter from the Brookfield Lawyers confirming their authority to act on behalf of the Plaintiff. *See* Docket No. 62, Mem. Supp. Mot., Ex. 42. On January 18, 2002, Citibank transferred $785,282.10 to Brookfield trust account, which represented the amounts of the time deposit accounts plus One Hundred Twelve Thousand One Hundred Eighty-Two Dollars and ten cents ($112,182.10) in accrued interest.

## DISCUSSION

The Defendant, Citibank now moves this court for summary judgment. Summary judgment is appropriate when the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56( c). The party opposing summary judgment cannot rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial. *Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir. 1988). Moreover, to defeat a summary judgment motion, the nonmoving party must come forward with evidence sufficient to establish the existence of any disputed element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 102 S.Ct. 2548 (1986). The Defendant's claims that all of the Plaintiff's claims are time barred and this court agrees.

*A. COUNT I - WRONGFUL DISHONOR*

Count I of the Plaintiff's complaint asserts a cause of action for wrongful dishonor under

13 Guam Code Ann. § 4202.[4] A cause of action for wrongful dishonor is subject to either a three-year limitation period under 7 Guam Code Ann. § 11305(1) as an action upon a liability created by law or a two-year limitations as action for injury caused by a wrongful act or negligence under 7 Guam Code Ann. § 11306. It is unnecessary to characterize the Plaintiff's claim under either a contract or tort theory because under either, the time period for the Plaintiff's cause of action is time barred. The Plaintiff's cause of action accrued on the date when each of his alleged transfer requests were not acted upon. An action for wrongful dishonor has been held to accrue at the time of dishonor. *Pera v. Kroger Co.*, 674 S.W.2d 715, 720 (Tenn.1984). Title 13 of Guam Code Ann. § 3122(2)( c) provides that a "cause of action against the obligor of a demand or time certificate of deposit accrues upon demand, . . . ." 13 Guam Code Ann. § 3122(2). A check is dishonored when it is not paid upon presentment. *See* 13 Guam Code Ann. § 3507(a).[5]

With respect to the requests for the transfer of the funds in his deposit accounts and presentment of the four checks, the latest date such a request was made was on or about December 7, 2001. The Plaintiff filed his complaint on January 17, 2005, over four years later. Accordingly, the cause of action for wrongful dishonor concerning the sixteen requests to transfer the deposit account funds and the presentment of the four checks is time barred.

### B. COUNT II - BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

The Plaintiff alleges that Citibank breached the Covenant of Good Faith and Fair Dealing because of seven written contracts that he entered into with Citibank on February 18, 1998. The Plaintiff argues that Citibank agreed that it would establish accounts for the Plaintiff, "which

---

[4]**§4402. Bank's Liability to Customer for Wrongful Dishonor**. A payor bank is liable to its customers for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages provided. If so proximately caused and proved, damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.

[5] **§3507(1) (a). Dishonor; Holder's Right of Recourse; Term Allowing Re-Presentment.** An instrument is dishonored when (a) a . . . presentment is duly made and due acceptance or payment is refused**.**

9

included, without limitation, time deposit accounts." *See* Docket No. 1, Compl. at ¶ 53. Plaintiff alleges that there was an implied covenant of good faith and fair dealing in these contracts, and that that covenant was broken when Citibank "refused or failed to honor the transfer requests." *See* Docket No.1, Compl. at ¶ 55. Plaintiff alleges injuries, including: lost income, the loss of good will and reputation in the business community, and injury to credit standing. *Id.* at ¶ 57.

Under Guam law, tort actions for bad faith are subject to a three year statute of limitations period. 13 GCA § 11305(7). This statute mirrors the California Code of Civil Procedure § 339, subdivision 1.

In this case, the contracts, which gave rise to this claim, were entered into between 1998, and December 7, 2001 (the last date of the requested check). *See* Docket No. 1, Compl. at ¶¶s 10-28. Also, all the asserted damages associated with the breach of the covenant of good faith occurred on or before July 26, 2001, the date the Plaintiff declared bankruptcy. Even viewing these facts in the light most favorable to the Plaintiff, the statute of limitations had run on this claim well before the Plaintiff filed his complaint in January of 2005.

### C. COUNT III - FRAUD

Under Guam law, the statute of limitations for fraud actions are three years from the discovery of the facts constituting the fraud. 13 G.C.A. § 11305(4). Discovery of fraud occurs "when the plaintiff discovers he has a cause of action or, through the use of reasonable diligence should have discovered it." *Hanohano v. Gill,* No. CV379-90, 1992 WL 97209, at *3 (D. Guam App. Div. 1992).

Here, Plaintiff's fraud claim concerns Citibank's representation on February 18, 1998, that the Plaintiff could transfer funds from his time deposit accounts to his checking account. *See* Docket No.1, Compl. at ¶ 60. However, when the Plaintiff made requests for such transfers his requests were denied. For purposes of the statute of limitations, the Plaintiff knew he had a cause of action in 2001, when he unsuccessfully tried to withdraw money from his account on over twenty different occasions. Since the statute of limitations is three years, and the claim was not brought until January of 2005, the Plaintiff's actions are time-barred.

///

### D. COUNT III - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The Plaintiff also brings a suit for Negligent Infliction of Emotional Distress ("NIED") based on Defendant's refusal to honor sixteen transfer requests, four checks, and one ATM transaction. These requests took place between October of 1998 and December of 2001. The Plaintiff claims that because he was refused access to his account on these occasions, he suffered emotional distress which was a primary cause of his bankruptcy in July of 2001. *See* Docket No.1, Compl. at ¶ 34.

However, the Plaintiff's claim for Negligent Infliction of Emotional Distress ("NIED") is subject to a two-year statute of limitations. 7 G.C.A. § 11306(1). The alleged NIED took place from October 1998 until December 2001, however, the Plaintiff did not bring suit until January of 2005. A cause of action accrues ". . . at the time that a suit may be maintained thereon, and from that date forward the applicable statute of limitations begins to run." *Pac. Rock Corp. v. Dept. of Ed.*, 2001 Guam 21, ¶49 (citing *Cannon v. United States*, 146 F. Supp. 827, 829 (Ct. Cl. 1956)). As a result, under Guam law, the action is time barred. 7 G.C.A. § 11306(1).

### E. COUNT IV - NEGLIGENT MISREPRESENTATION

Similarly, Plaintiff's claim for Negligent Misrepresentation is subject to a two-year statute of limitations. 7 G.C.A. § 11305(7). The alleged Negligent Misrepresentation took place on February 18, 1998, when the Defendant allegedly made a false statement that the Plaintiff could transfer money from his time deposit to his checking account. Plaintiff, however, did not bring suit until January of 2005. A cause of action accrues ". . . at the time that a suit may be maintained thereon, and from that date forward the applicable statute of limitations begins to run." *Pac. Rock Corp.*, 2001 Guam 21, ¶49. Similar to the fraud claim, once Citibank refused the Plaintiff access to the account on multiple occasions, the statute of limitations began to run. The Plaintiff was clearly on notice that Citibank was not honoring its representation that the Plaintiff could freely transfer funds. Because the Plaintiff did not bring suit until over four years after his cause of action accrued, under Guam law, the action is time barred. 7 G.C.A. § 11305(7).

///

### F. COUNT V - TORTIOUS BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING

As stated above, the statute of limitations for a contract action for breach of the covenant of good faith and fair dealing is four years. 7 G.C.A. §11303(1). The Plaintiff argues that each time that Citibank refused to honor one of his transfer checks, it constituted a separate breach of the covenant of good faith and fair dealing. The Plaintiff made sixteen such requests to Citibank. As such, each cause of action arose at the time the check was refused, and ran four years after the initial cause of action. Consequently, all checks written between October 1998, and September 4, 2000, are barred from litigation by the statute of limitations.

Thirteen of the sixteen requests are barred by the four year statute of limitations. Three of the Plaintiff's requests, however, fall within the four-year time frame: a transfer request on July 20, 2001, and requests on December 6 and 7, 2001. Although not barred by the statute of limitations, the three requests falling within the four year time frame are barred by the contractual time limitations provision that the Plaintiff agreed to in the Funds Transfer Agreement. That agreement contains language which states "if I fail to notify Citibank of any claim concerning the funds transfer within one year from the date that I have received notification that the funds transfer was executed, any claim by me will be barred under applicable law." (*See* Section 16 of Exhibit 23). The Plaintiff signed this agreement on July 20, 2001. The agreement also contained a provision stating "I have read and agreed to the terms and conditions stated in the Funds Transfer Agreement." Additionally, the Plaintiff stated that he read the Agreement carefully. *See* Docket No. 62, Exhibit 50, p. 71 line 9-15.

Because the Plaintiff did not bring to the attention of Citibank any of his concerns regarding the transfer of funds within the one year period, he is now time barred from bringing legal action against it. Guam law holds that limitation periods which condition the right to sue are enforceable. The Supreme Court of Guam upheld a one year limitation on a construction contract in *Dillingham v. Brown*, 2003 Guam 2, 2003 WL 60744. The court held that a contractual limitations period "which shortens a statute of limitations can be validly contracted as long as it is not in itself unreasonable or is not so unreasonable as to show imposition or undue advantage." *Id.* at ¶ 25.

12

In this instance, there was no showing that the contractual clause in question unreasonably imposed upon the Plaintiff or that it was unduly advantageous to Citibank. The Plaintiff was free to bank at any number of institutions, and was aware of the contractual limitation when he signed the agreement. Accordingly, the Plaintiff's three remaining claims are barred under the contractual limitation provision.

## CONCLUSION

Based upon the foregoing the court finds that all of the Plaintiff's claims are time barred by the applicable statute of limitations, or by the contractual time limitation contained in the Funds Transfer Agreement. Accordingly, the court **GRANTS** the Defendant's Motion for Summary Judgment.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Apr 07, 2008**